DEALY & SILBERSTEIN, LLP
William J. Dealy (WD 9776)
Milo Silberstein (MS 4637)
225 Broadway, Suite 1405
New York, New York 10007
(212) 385-0066
*Attorneys for Plaintiffs The Trustees of the United Teamster*
*Fund and the United Teamster Pension Fund*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
THE TRUSTEES OF THE UNITED TEAMSTER
FUND and THE TRUSTEES OF THE UNITED
TEAMSTER PENSION FUND,

                    Plaintiffs,

       - against -

PHOENIX LABORATORIES, INC., EVERGOOD PRODUCTS
CORPORATION, GREAT EARTH COMPANIES, INC.,
GREAT EARTH DISTRIBUTION, INC., GREAT EARTH
INTERNATIONAL FRANCHISING CORP., BODYONICS,
LTD., CYENCE LABS, INC., CYTODYNE, LLC, JOHN
DOE, EXECUTOR OF THE ESTATE OF MELVIN RICH,
STEPHEN STERN, CHARLOTTE RICH and HALLIE RICH,

                    Defendants.
-------------------------------------------------------------------------------X

Case No. 08-CV-4926
(JS) (ETB)

**AMENDED**
**COMPLAINT**

ECF ACTION

**Jury Trial Demanded**

Plaintiffs the Trustees of the United Teamster Fund (the "Welfare Fund") and the Trustees

of the United Teamster Pension Fund (the "Pension Fund") (collectively the "Funds") by their

attorneys, Dealy & Silberstein, LLP, complaining of the Defendants EVERGOOD PRODUCTS

CORPORATION ("Evergood"). PHOENIX LABORATORIES, INC. ("Phoenix Labs"), GREAT

EARTH COMPANIES, INC. ("Great Earth"), GREAT EARTH DISTRIBUTION, INC. ("Great

Earth Distribution"). GREAT EARTH INTERNATIONAL FRANCHISING CORP. ("Great

Earth International Franchising"), BODYONICS, LTD. ("Bodyonics"), CYENCE LABS, INC.

("Cyence"), CYTODYNE, LLC ("Cytodyne"), JOHN DOE, EXECUTOR OF THE ESTATE OF MELVIN RICH ("Melvin Rich"), STEPHEN STERN, CHARLOTTE RICH and HALLIE RICH (collectively, the "Defendants"), hereby allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.    This is a civil action brought by employee welfare and pension benefit funds against

Defendants Phoenix Labs, Evergood, Great Earth, Great Earth Distribution, Great Earth

International Franchising, Bodyonics, Cyence, and Cytodyne pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201 and 2202, for a determination of a "controlled group"

status among Defendants Phoenix Labs, Evergood, Great Earth, Great Earth Distribution,

Great Earth International Franchising, Bodyonics, Cyence, and Cytodyne for purposes of

collecting withdrawal liability assessed by the Pension Fund against Defendant Phoenix

Labs; pursuant to the Multiemployer Pension Plan Amendments Act of 1980, as amended

("MPPAA"), 29 U.S.C. § 1381, *et seq.*; pursuant to Section 502, 515 and 4301 of the

Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §

1132(a)(3), 1132(e)(1), 1132(f), 1145, 1451; pursuant to the Labor Management Relations

Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a); and pendant claims pursuant to

New York Debtor and Creditor Law ("DCL") §273.

2.    This action seeks: (1) to determine "controlled group" status by and among Defendants

Phoenix Labs, Evergood, Great Earth, Great Earth Distribution, Great Earth International

Franchising, Bodyonics, Cyence, and Cytodyne for purposes of assessment of joint and

several liability for Defendant Phoenix Labs' withdrawal liability owed to the Pension

Fund pursuant to MPPAA; (2)  to recover, inter alia, Defendant Phoenix Labs' withdrawal

liability owed to the Pension Fund; (3) a determination that certain payments either made and/or scheduled to be made pursuant to an Asset Purchase Agreement between Defendant Phoenix Labs and another company. Phoenix Labs Rising. LLC ("Phoenix Rising"), to Defendants Melvin Rich, Stephen Stern, Hallie Rich and Charlotte Rich, constitute a constructive fraudulent conveyance, and a direction that those payments be used to satisfy Defendant Phoenix Labs' withdrawal liability owed to the Pension Fund. Defendant Phoenix Labs' delinquent health, welfare and pension contributions owed to the Funds for the month of April 2008, and the entire amount due and owing to the Welfare Fund pursuant to a judgment in a prior action obtained by the Welfare Fund against Phoenix Labs and Evergood; (4) to recover, inter alia, delinquent health, welfare and pension contributions which are owed to the Funds by Defendant Phoenix Labs for the month of April 2008; (5) to recover delinquent contributions owed to the Funds for the month of April 2008 resulting from breach of fiduciary duty by Melvin Rich, Hallie Rich and Charlotte Rich: (6) to recover costs and attorneys' fees incurred by the Welfare Fund in connection with a default by Defendants Phoenix Labs and Evergood pursuant to a Stipulation of Settlement executed in a prior action and the Welfare Fund's subsequent enforcement of a judgment against Phoenix Labs and Evergood obtained as a result of that default; and (7) to appoint a Federal Monitor to oversee the operations of Defendants Phoenix Labs, Evergood, Great Earth, Great Earth Distribution, Great Earth International Franchising, Bodyonics, Cyence, and Cytodyne.

3.     Jurisdiction of this Court is invoked under the following statutes:

a)     29 U.S.C. § 1381, *et seq*. (MPPAA);

3

b)     29 U.S.C. §§ 1104(a)(1), 1109(a), 1132(e)(1), 1132(f) and 1145 (ERISA);

c)     29 U.S.C. § 185(a) (LMRA);

d)     28 U.S.C. § 1331 (federal question);

e)     28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce);

f)     28 U.S.C.  2201 and 2202 (action for a declaratory judgment); and

g)     28 U.S.C. § 1367 (supplemental jurisdiction).

## VENUE

4.     Venue properly lies in this district pursuant to Section 502(e)(2) of ERISA (29 U.S.C. § 1132(e)(2)).  Service of process may be made on Defendants in any other district in which they may be found, pursuant to Section 502(e)(2) of ERISA (29 U.S.C. § 1132(e)(2)).

## THE PARTIES

5.     At all relevant times, Plaintiffs, the Trustees of the United Teamster Fund, have administered the United Teamster Fund (the "Welfare Fund").

6.     The Welfare Fund was established pursuant to collective bargaining agreements in 1949 by Declarations of Trust, which have been amended from time to time (the "Trust Agreements").

7.     The Welfare Fund was formerly known as the Union Welfare Fund-Local 202.  The name change was effectuated in 2000 by an amendment to the Trust Agreements.

8.     At all relevant times, Plaintiffs, the Trustees of the United Teamster Pension Fund have administered the United Teamster Pension Fund (the "Pension Fund").

9.     The Pension Fund was formerly known as the Union Pension Trust Fund-Local 202.  The

name change was effectuated in 2002 by amendment to the Trust Agreements. The Welfare Fund and the Pension Fund are referred to collectively herein as the "Funds."

10. The Funds are "employee benefit plans" established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), within the meanings of Sections 3(1), 3(2), and 3(3), and 502(d)(1) of the ERISA, 29 U.S.C. §§ 1002(1), 1002(2), 1002(3) and 1132(d)(1) and are multi-employer plans within the meaning of sections 3(37) and 515 of ERISA (29 U.S.C. §§ 1002(37) and 1145).

11. The principal place where the Funds are administered is 2137-2147 Utica Avenue, Brooklyn, New York, 11234.

12. The purpose of the Funds is to provide various fringe benefits to eligible employees on whose behalf employers contribute to the Funds, pursuant to collective bargaining agreements between employers in the food and produce industry and other businesses and Local 202, International Brotherhood of Teamsters, AFL-CIO, (the "Union").

13. The Funds receive contributions from, inter alia, employers who are parties to collective bargaining agreements with the Union, invest and maintain those monies, and distribute pension and health and welfare benefits to employees and to other beneficiaries eligible to receive them pursuant to the Funds' plans.

14. The Union is a local labor organization composed of approximately 3,000 members representing, inter alia, employees of employers who are purveyors, deliverers, receivers and/or distributors or transporters of perishable food products and/or other businesses in and around the Greater New York City area.

15. Upon information and belief, Defendant Evergood, a Delaware corporation, is duly

5

authorized to conduct business in the State of New York, and is the corporate parent of Defendants Phoenix Labs, Great Earth, Great Earth Distribution, Great Earth International Franchising, Bodyonics, Cyence, and Cytodyne, with its principal place of business located at 200 Adams Boulevard, Farmingdale, New York 11735 and/or 4117 Mercedes Way, Edgewood, New York 11767.

16. Upon information and belief, Defendant Phoenix Labs is a corporation duly organized under the laws of the State of New York, with its principal place of business located at 200 Adams Boulevard, Farmingdale, New York 11735 and/or 4117 Mercedes Way, Edgewood, New York 11767.

17. Upon information and belief, Defendant Great Earth is a corporation duly organized under the laws of the State of New York, with its principal place of business located at 200 Adams Boulevard, Farmingdale, New York 11735 and/or 4117 Mercedes Way, Edgewood, New York 11767.

18. Upon information and belief, Defendant Great Earth Distribution is a corporation duly organized under the laws of the State of New York, with its principal place of business located at 200 Adams Boulevard, Farmingdale, New York 11735 and/or 4117 Mercedes Way, Edgewood, New York 11767.

19. Upon information and belief, Defendant Great Earth International Franchising is a corporation duly organized under the laws of the State of New York, with its principal place of business located at 200 Adams Boulevard, Farmingdale, New York 11735 and/or 4117 Mercedes Way, Edgewood, New York 11767.

20. Upon information and belief, Defendant Bodyonics is a corporation duly organized under

6

the laws of the State of New York, with its principal place of business located at 200

Adams Boulevard, Farmingdale, New York 11735 and/or 4117 Mercedes Way,

Edgewood, New York 11767.

21.     Upon information and belief, Defendant Cyence is a corporation duly organized under the

laws of the State of New York, with its principal place of business located at 200 Adams

Boulevard, Farmingdale, New York 11735 and/or 4117 Mercedes Way, Edgewood, New

York 11767.

22.     Upon information and belief Defendant Cytodyne is a corporation duly organized under

the laws of the State of New York, with its principal place of business located at 200

Adams Boulevard, Farmingdale, New York 11735 and/or 4117 Mercedes Way,

Edgewood, New York 11767.

23.     Upon information and belief, at all relevant times Defendant Melvin Rich was a principal

and corporate officer of Defendants Phoenix Labs and Evergood. Upon information and

belief, Defendant Melvin Rich passed away in or around November 2008, and his Estate is

accordingly named as a Defendant in this action.

24.     Upon information and belief, Defendant Charlotte Rich is a principal and corporate officer

of Defendants Phoenix Labs and Evergood.

25.     Upon information and belief, Defendant Hallie Rich is a principal and corporate officer of

Defendants Phoenix Labs, Evergood, Great Earth, Great Earth Distribution and Great

Earth International Franchising.

## FACTS

26.     At all relevant times, Defendant Phoenix Labs was a party to a collective bargaining

7

agreement ("CBA") with the Union which covered, <u>inter alia</u>, the wages, terms, and conditions of employment for its employees who work in covered employment.

27.     Pursuant to the CBA, the Trust Agreements and ERISA, at all relevant times Defendant Phoenix Labs was obligated to remit contributions to the Funds on behalf of all of its employees working in covered employment.

28.     Pursuant to the CBA, at all relevant times, Defendant Phoenix Labs was similarly obligated to submit monthly contribution reports to the Funds describing the hours and days worked by each of its employees working in covered employment.

## THE UNDERLYING FEDERAL ACTION

29.     On April 27, 2007, the Welfare Fund commenced an action entitled <u>The Trustees of the United Teamster Fund v. Phoenix Laboratories, Inc., Evergood Products Corp., Stephen Stern, Esq., Melvin Rich and Charlotte Rich</u>, E.D.N.Y. Case No.: 07-CV-1761, (the "Underlying Action").

30.     The Underlying Action alleged, <u>inter alia</u>, that Defendant Phoenix Labs and its corporate parent, Defendant Evergood, had failed to pay the required contributions to the Welfare Fund for the period of January 2007 through May 2007 and that Melvin Rich, Stephen Stern and Charlotte Rich had breached their fiduciary responsibilities to the Funds by exercising authority and control over the Funds' assets.

31.     Thereafter, the Underlying Action was settled pursuant to a written Stipulation and Order of Settlement, which was "So Ordered" by United States District Judge Joanna Seybert on August 14, 2007.

32.     In connection with the settlement of the Underlying Action and pursuant to the Stipulation

and Order of Settlement, Melvin Rich, in his capacity as an officer of Defendants Phoenix Labs and Evergood, executed an Affidavit of Confession of Judgment, pursuant to which Defendants Phoenix Labs and Evergood confessed judgment in the amount of $360,000.00 in favor of the Welfare Fund.  This Confession of Judgment was to be held in escrow by the Welfare Fund's counsel, and not entered with the Supreme Court of the State of New York, County of Suffolk, except in the event of an uncured default under the terms of the Stipulation and Order of Settlement.

33.  The Stipulation and Order of Settlement in the Underlying Action further provided that Defendant Phoenix Labs was required to pay the $360,000.00 to the Welfare Fund in various installments pursuant to a payout schedule set forth in the Stipulation and Order of Settlement.  Defendant Phoenix Labs was similarly obligated to timely file all future employer contribution reports and timely make all future fringe benefit contribution payments to the Welfare Fund, which were due on or before the 5th day of every month.

34.   Finally, the Stipulation and Order of Settlement in the Underlying Action provided that, in the event of an uncured default, Defendants Phoenix Labs and Evergood, jointly and severally, were liable for all reasonable costs and attorney's fees incurred by the Welfare Fund to enter the Confession of Judgment and to enforce any judgment obtained against Defendants Phoenix Labs and Evergood in order to collect the sums due.

## DEFAULT UNDER THE TERMS OF THE STIPULATION AND ORDER OF SETTLEMENT OF THE UNDERLYING ACTION BY DEFENDANT PHOENIX LABS

35.  Defendant Phoenix Labs wilfully failed to remit the required health, welfare and pension reports and contributions to the Funds for the month of April 2008, which were due on or

before April 5, 2008.

36.    By wilfully failing to remit the required health, welfare and pension reports and
contributions, Defendant Phoenix Labs violated the terms of the Stipulation and Order of
Settlement of the Underlying Action, the CBA, the Trust Agreements and ERISA.

37.    By letter dated April 10, 2008, counsel for the Welfare Fund notified Defendant Phoenix
Labs that it had failed to remit the required health, welfare and pension contributions to the
Funds, which were due on or before April 5, 2008.

## ENTRY OF JUDGMENT BY THE WELFARE FUND AND ENFORCEMENT THEREOF

38.    On May 7, 2008, after Defendant Phoenix Labs had failed to cure its default in the time
provided by the Stipulation and Order of Settlement, the Confession of Judgment against
Defendants Phoenix Labs and Evergood was entered in the Supreme Court of the State of
New York, County of Suffolk in the amount of $128,225.00, representing the settlement
amount of $360,000.00 from the Underlying Action, less $232,000.00 as credit for
payments previously made by Defendant Phoenix Labs, plus costs and disbursements in
the amount of $225.00.

39.    On or about July 24, 2008, the Welfare Fund, through the Suffolk County Sheriff's Office,
recovered $38,411.23, representing the principal amount of $36,419.85 and $1,911.88 in
interest, seized from seven (7) JP Morgan & Chase bank accounts maintained by
Defendants Phoenix Labs and Evergood, which had been restrained pursuant to a
Subpoena Duces Tecum and Restraining Notice served upon JP Morgan Chase & Co.

40.    Based upon the foregoing, there remains $89,798.27 due and unpaid pursuant to the
Welfare Fund's judgment obtained against Defendants Phoenix Labs and Evergood in

connection with the Underlying Action, plus additional accrued interest, costs, and legal fees.

## SALE OF ASSETS BY DEFENDANT PHOENIX LABS TO PHOENIX RISING

41. Upon information and belief, in or around April 2008, Defendant Phoenix Labs entered into an Asset Purchase Agreement ("APA") with Phoenix Rising, pursuant to which Defendant Phoenix Labs agreed to sell its assets to Phoenix Rising in exchange for, _inter alia_, Phoenix Rising's assumption of certain liabilities of Defendant Phoenix Labs, as well as Phoenix Rising's agreement to pay the purchase price of one million ($1,000,000.00) dollars to Defendant Phoenix Labs by delivery of a one million ($1,000,000.00) dollar promissory note between Phoenix Rising and Defendant Phoenix Labs.

42. On or about July 2, 2008, the Funds conducted the deposition of Defendant Stern in connection with the enforcement of the Welfare Fund's judgment against Defendant Phoenix Labs and Evergood obtained in the Underlying Action.

43. The night prior to Defendant Stern's deposition, Defendant Stern produced approximately 2,400 pages of documents that were responsive to a Subpoena Duces Tecum that had previously been served by the Welfare Fund upon Defendant Stern.

44. Within this production were several communications and documents relating to the APA between Defendant Phoenix Labs and Phoenix Rising, including, _inter alia_, the following:

   A. An email alluding to the existence of a "Union Employee Rental Agreement" between Defendant Phoenix Labs and Phoenix Rising;

   B. A copy of the APA;

   C. Several of the exhibits to the APA including, but not limited to, consulting

11

agreements between Phoenix Rising and Defendants Melvin Rich, Stephen Stern and Hallie Rich;

D.    Non-compete agreements between Phoenix Rising and Defendants Melvin Rich, Stephen Stern and Hallie Rich;

E.    The promissory note between Phoenix Rising and Defendant Phoenix Labs totaling one million ($1,000,000.00) dollars;

F.    A promissory note between Phoenix Rising and Defendant Melvin Rich totaling one million ($1,000,000.00) dollars;

G.    A promissory note between Phoenix Rising and Defendant Stephen Stern totaling four hundred thousand ($400,000.00) dollars;

H.    A promissory note between Phoenix Rising and Defendant Hallie Rich totaling one hundred and fourteen thousand ($114,000.00) dollars; and

I.    A promissory note between Phoenix Rising and Defendant Charlotte Rich totaling two hundred thousand ($200,000.00) dollars.

45.    Upon information and belief, a major portion of the sale price of the assets of Defendant Phoenix Labs to Phoenix Rising was for payments made and/or scheduled to be made for non-compete agreements between Phoenix Rising and Defendants Melvin Rich, Stephen Stern, Hallie Rich and Charlotte Rich.

46.    At his deposition on or about July 2, 2008, Defendant Stephen Stern testified that he is not an employee of Defendant Phoenix Labs, has not been an officer of Defendant Phoenix Labs for "at least approximately five (5) years", and that since that time he has been engaged with Defendant Phoenix Labs solely in his capacity as its attorney.

47. Upon information and belief, Defendant Charlotte Rich is approximately eighty-nine (89) years old and has not worked full time for Defendant Phoenix Labs for many years.

48. Upon Information and belief, Defendant Melvin Rich was gravely ill at the time of the signing of the APA in or around April 2008 and has since passed away.

49. Upon information and belief, the structuring of the payments pursuant to the APA, by which Defendants Melvin Rich, Stephen Stern, Charlotte Rich and Hallie Rich received and/or are scheduled to receive large sums of money in exchange for non-compete agreements, constitutes a constructively fraudulent transaction because Defendant Phoenix Labs has been rendered insolvent by way of this transaction and fair consideration for the assets of Defendant Phoenix Labs has been or is scheduled to be diverted to its principals instead of its legitimate creditors.

50. Upon information and belief, at the time of the transfer of the assets of Defendant Phoenix Labs to Phoenix Rising, the parties believed the value of the assets of Defendant Phoenix Labs to be worth $2,714,000.00, which included $1,714,000.00 to be paid to Defendants Melvin Rich, Stephen Stern, Charlotte Rich and Hallie Rich for the non-compete agreements.

51. In addition, upon information and belief, pursuant to the APA, Defendants Melvin Rich, Stephen Stern and Hallie Rich were provided with consulting agreements whereby Defendants Melvin Rich and Hallie Rich were scheduled to be paid an annual salary of $100,000.00, plus sales commissions, for five (5) years, with an additional two (2) year extension at the option of Phoenix Rising, and Defendant Stephen Stern was scheduled to be paid an annual salary of $100,000.00, plus sales commissions, for three (3) years, with

an additional two (2) year extension at the option of Phoenix Rising.

52.   Upon information and belief, the payment scheduled to be made to Defendant Phoenix Labs pursuant to the APA does not constitute fair consideration for its value, and the APA was structured in a manner to leave Defendant Phoenix Labs inadequately capitalized to satisfy its legitimate creditors, including Plaintiffs.

53.   Accordingly, since the sales price without the price for the non-compete agreements could not pay the debts of Defendant Phoenix Labs, and was not for fair consideration, the sale of the assets for the unnecessary non-compete agreements constitutes a constructive fraudulent conveyance.

## DEFENDANT PHOENIX LABS HAS ENGAGED IN A COMPLETE WITHDRAWAL FROM THE PENSION FUND

54.   The "Sale of Assets" provision of MPPAA, 29 U.S.C.A. § 1384, requires that, in order for Defendant Phoenix Labs to have avoided liability for a partial or complete withdrawal from the Pension Fund, Defendant Phoenix Labs was required to include language in the APA providing that: (1) Phoenix Rising have an obligation to contribute to the plan with respect to the operations for substantially the same amounts as the selling employer (Defendant Phoenix Labs); (2) Phoenix Rising must provide the plan with a bond or establish an escrow account for five plan years, with the amount equal to the average annual contribution required under the plan for the preceding three years or the annual required contribution for the previous plan year; and (3) must provide that if Phoenix Rising completely withdraws from the plan or partially withdraws with respect to the operations within the first five plan years after the sale of assets, that Defendant Phoenix

14

Labs will be secondarily liable for any withdrawal liability.

55.  The terms of the APA between Phoenix Rising and Defendant Phoenix Labs failed entirely to comply with the "Sale of Assets" provision of MPPAA.

56.  As a result, Defendant Phoenix Labs has engaged in a complete withdrawal from the Pension Fund within the meaning of 29 U.S.C. §1383.

57.  As a consequence of Defendant Phoenix Labs' withdrawal from the Pension Fund, the Pension Fund has determined that Defendant Phoenix Labs is liable to the Pension Fund in the amount of no less than nine hundred and sixty-two thousand seven hundred and forty-nine ($962,748.00) dollars, as determined pursuant to 29 U.S.C. §1391, and Defendant Phoenix Labs is therefore liable to the Pension Fund for this amount pursuant to 29 U.S.C. §1381.

58.  Upon information and belief, at all relevant times Defendants Evergood, Defendant Phoenix Labs, Great Earth, Great Earth Distribution, Great Earth International Franchising, Bodyonics, Cyence, and Cytodyne were under "common control" within the meaning of 29 U.S.C. §1031(b)(1) and I.R.C. § 414, so as to make each jointly and severally liable to the Pension Fund for Defendant Phoenix Labs' withdrawal liability.

59.  On or about June 17, 2008, pursuant to 29 U.S.C. §1383 and 1399, the Pension Fund sent a Notice of Withdrawal Liability, together with a schedule of payments, to Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution, Great Earth International Franchising and Phoenix Labs Rising, as well as the attorneys for these various companies.

60.  Pursuant to the Notice of Withdrawal Liability and 29 U.S.C. §1399 (c), Defendant

Phoenix Labs was required to make fifty-six (56) quarterly payments in the amount of $26,298.75 commencing on August 18, 2008, and thereafter on or before January 1, April 1, July 1 and October 1 of each year, plus a final payment of $7,679.00, until the withdrawal liability was paid in full.

61. Defendant Phoenix Labs failed to make any withdrawal liability payments to the Pension Fund on or before August 18, 2008.

62. On or about August 26, 2008, the Pension Fund notified Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution, Great Earth International Franchising and Phoenix Labs Rising, as well as the attorneys for these various companies, that Defendant Phoenix Labs was in default within the meaning of 29 U.S.C. §1399(c)(5) for failure to make any withdrawal liability payments to the Pension Fund on or before August 18, 2008.

63. Despite due demand, Defendant Phoenix Labs has continued to fail to make any withdrawal liability payments to the Pension Fund.

64. As alleged above, in connection with the APA, Phoenix Rising provided Defendant Phoenix Labs with a one million ($1,000,000.00) dollar promissory note.

65. Upon information and belief, the only asset of Defendant Phoenix Labs is the promissory note in the amount of one million ($1,000,000.00) dollars, which amount remains unpaid in its entirety.

66. Moreover, on July 30, 2008 Phoenix Rising filed for Chapter 11 bankruptcy, in the matter entitled In re Phoenix Labs Rising, LLC (US Bankruptcy Court, Eastern District of New York Case No.: 8-08-74063) and there is accordingly a strong possibility that this one

16

million ($1,000,000.00) dollars will not ultimately be paid by Phoenix Rising, in whole or in part, to Defendant Phoenix Labs.

67.   Should the aforementioned promissory notes payable by Phoenix Rising to Defendants Phoenix Labs, Melvin Rich, Stephen Stern, Charlotte Rich and Hallie Rich be dissipated or paid off without the sums being used to satisfy the MPPAA withdrawal liability, the Pension Fund may be unable to secure payment from Defendant Phoenix Labs for the withdrawal liability assessed under MPPAA.

## VALUE OF ASSETS SOUGHT

68.   Upon information and belief, the "controlled group" includes Defendant Great Earth.

69.   Upon information and belief, Defendant Great Earth is a valuable company with a network of independent stores.

70.   During her deposition, Defendant Hallie Rich testified, inter alia, that Defendant Great Earth had recently paid one hundred thousand ($100,000.00) dollars to a manufacturer of dietary supplements called "Global Health" to supply product to Defendant Great Earth for distribution to its vitamin stores.

71.   Accordingly, upon information and belief, Defendant Great Earth continues to be an operating company that is generating income and profits.

72.   By reason of the foregoing, Plaintiffs should be allowed to seize the valuable business of Great Earth and a Corporate Monitor should be appointed to oversee the operations of Defendants Phoenix Labs, Evergood, Great Earth, Great Earth Distribution, Great Earth International Franchising, Bodyonics, Cyence, and Cytodyne to ensure payment of the amounts detailed herein owed to the Funds.

17

**AS AND FOR A FIRST CAUSE OF ACTION BY THE PENSION FUND AGAINST
DEFENDANTS PHOENIX LABS, EVERGOOD, GREAT EARTH, GREAT EARTH
DISTRIBUTION, GREAT EARTH INTERNATIONAL FRANCHISING, BODYONICS,
CYENCE, AND CYTODYNE - DECLARATORY JUDGMENT FINDING THAT
DEFENDANTS EVERGOOD, GREAT EARTH, GREAT EARTH DISTRIBUTION,
GREAT EARTH INTERNATIONAL FRANCHISING, BODYONICS, CYENCE, AND
CYTODYNE ARE UNDER "COMMON CONTROL"
WITH DEFENDANT PHOENIX LABS**

73.     The Pension Fund repeats and realleges each and every allegation set forth in paragraphs

        1 through 72 as if fully set forth herein.

74.     Upon information and belief, at all times material herein, Defendants Phoenix Labs,

        Evergood, Great Earth, Great Earth Distribution, Great Earth International Franchising,

        Bodyonics, Cyence, and Cytodyne operated under a common control, as defined in the

        Treasury regulations adopted under I.R.C. Section 414, 29 U.S.C. 1301(b)(1), 26 C.F.R.

        1.414(c)-1 to (c)-5, and Defendants Phoenix Labs, Evergood, Great Earth, Great Earth

        Distribution, Great Earth International Franchising, Bodyonics, Cyence, and Cytodyne

        are therefore to be treated as a single employer for purposes of withdrawal liability; each

        being jointly and severally liable for the withdrawal liability incurred by Defendant

        Phoenix Labs to the Pension Fund.

75.     Based upon the facts set forth above, the Pension Fund requests that a declaratory

        judgment be entered finding Defendants Evergood, Great Earth, Great Earth Distribution,

        Great Earth International Franchising, Bodyonics, Cyence, and Cytodyne to be under

        "common control" with Defendant Phoenix Labs.

76.     Based upon the facts set forth above, the Pension Fund requests that Defendants Phoenix

Labs, Evergood, Great Earth, Great Earth Distribution, Great Earth International

Franchising, Bodyonics, Cyence, and Cytodyne be jointly and severally ordered, directed

and compelled to pay to the Pension Fund the full amount of withdrawal liability incurred

by Defendant Phoenix Labs, in an amount not less than $962,748.00.

## AS AND FOR A SECOND CAUSE OF ACTION BY THE PENSION FUND AGAINST DEFENDANT PHOENIX LABS - MPPAA WITHDRAWAL LIABILITY

77.    The Pension Fund repeats and realleges each and every allegation set forth in paragraphs

1 through 76 as if fully set forth herein.

78.    In or around April 2008, Defendant Phoenix Labs entered into an APA with Phoenix

Rising.

79.    The "Sale of Assets" provision of MPPAA, 29 U.S.C.A. § 1384, requires that, in order

for Defendant Phoenix Labs to have avoided liability for a partial or complete withdrawal

from the Pension Fund, Defendant Phoenix Labs was required to include language in the

APA providing that: (1) Phoenix Rising have an obligation to contribute to the plan with

respect to the operations for substantially the same amounts as the selling employer

(Defendant Phoenix Labs); (2) Phoenix Rising must provide the plan with a bond or

establish an escrow account for five plan years, with the amount equal to the average

annual contributions required under the plan for the preceding three years or the annual

required contribution for the previous plan year; and (3) must provide that if Phoenix

Rising completely withdraws from the plan or partially withdraws with respect to the

operations within the first five plan years after the sale of assets, that Defendant Phoenix

Labs will be secondarily liable for any withdrawal liability.

80.     The terms of the APA failed entirely to comply with the "Sale of Assets" provision of
        MPPAA.

81.     As a result, Defendant Phoenix Labs has engaged in a complete withdrawal from the
        Pension Fund within the meaning of 29 U.S.C. §1383.

82.     As a consequence of Defendant Phoenix Labs' withdrawal from the Pension Fund, the
        Pension Fund has determined that Defendant Phoenix Labs is liable to the Pension Fund
        in the amount of no less than nine hundred and sixty-two thousand seven hundred and
        forty-eight ($962,748.00) dollars, as determined pursuant to 29 U.S.C. §1391, and
        Defendant Phoenix Labs is therefore liable to the Pension Fund for this amount pursuant
        to 29 U.S.C. §1381.

83.     The Trustees of the Pension Fund have a statutory and fiduciary obligation to collect the
        withdrawal liability from a withdrawing employer pursuant to 29 U.S.C. § 1382.

84.     On or about June 17, 2008, pursuant to 29 U.S.C. §1383 and 1399, the Pension Fund sent
        a Notice of Withdrawal Liability, together with a schedule of payments, to Defendants
        Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth
        Distribution and Great Earth International Franchising, as well as the attorneys for these
        various companies.

85.     Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great
        Earth Distribution and Great Earth International Franchising failed to make any
        withdrawal liability payments to the Pension Fund.

86.     On or about August 26, 2008, the Pension Fund notified Defendants Phoenix Labs,
        Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great

20

Earth International Franchising, as well as the attorneys for these various companies, that Defendant Phoenix Labs was in default within the meaning of 29 U.S.C. §1399(c)(5) for failure to make any withdrawal liability payments to the Pension Fund on or before August 18, 2008.

87.     More than sixty (60) days have elapsed since Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth International Franchising received the MPPAA default notice and Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution, Great Earth International Franchising and Phoenix Labs Rising have failed to make any withdrawal liability payments whatsoever.

88.     By reason of the failure by Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth International Franchising to make any withdrawal liability payments, Defendant Phoenix Labs is in default with the meaning of 29 U.S.C. §1399(c)(5).

89.     Accordingly, Defendant Phoenix Labs is liable to the Pension Fund for the full amount of withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less than $962,748.00, plus interest, costs and attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION BY THE PENSION FUND AGAINST DEFENDANT EVERGOOD - MPPAA WITHDRAWAL LIABILITY

90.     The Pension Fund repeats and realleges each and every allegation set forth in paragraphs 1 through 89 as if fully set forth herein.

91.     In or around April 2008, Defendant Phoenix Labs entered into an APA with Phoenix

21

Rising.

92.     The "Sale of Assets" provision of MPPAA, 29 U.S.C.A. § 1384, requires that, in order
        for Defendant Phoenix Labs to have avoided liability for a partial or complete withdrawal
        from the Pension Fund, Defendant Phoenix Labs was required to include language in the
        APA providing that: (1) Phoenix Rising have an obligation to contribute to the plan with
        respect to the operations for substantially the same amounts as the selling employer
        (Defendant Phoenix Labs); (2) Phoenix Rising must provide the plan with a bond or
        establish an escrow account for five plan years, with the amount equal to the average
        annual contribution required under the plan for the preceding three years or the annual
        required contributions for the previous plan year; and (3) must provide that if Phoenix
        Rising completely withdraws from the plan or partially withdraws with respect to the
        operations within the first five plan years after the sale of assets, that Defendant Phoenix
        Labs will be secondarily liable for any withdrawal liability.

93.     The terms of the APA failed entirely to comply with the "Sale of Assets" provision of
        MPPAA.

94.     As a result, Defendant Phoenix Labs has engaged in a complete withdrawal from the
        Pension Fund within the meaning of 29 U.S.C. §1383.

95.     As a consequence of Phoenix Labs' withdrawal from the Pension Fund, the Pension Fund
        has determined that Defendant Phoenix Labs is liable to the Pension Fund in the amount
        of no less than nine hundred and sixty-two thousand seven hundred and forty-eight
        ($962,748.00) dollars, as determined pursuant to 29 U.S.C. §1391, and Defendant
        Phoenix Labs is therefore liable to the Pension Fund for this amount pursuant to 29

22

U.S.C. §1381.

96.     The Trustees of the Pension Fund have a statutory and fiduciary obligation to collect the withdrawal liability from a withdrawing employer pursuant to 29 U.S.C. § 1382.

97.     Upon information and belief, Defendant Evergood is under "common control" with Defendant Phoenix Labs, and therefore is jointly and severally liable to the Pension Fund for the withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less than $962,748.00.

98.     On or about June 17, 2008, pursuant to 29 U.S.C. §1383 and 1399, the Pension Fund sent a Notice of Withdrawal Liability, together with a schedule of payments, to Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth International Franchising, as well as the attorneys for these various companies.

99.     Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth International Franchising failed to make any withdrawal liability payments to the Pension Fund.

100.    On or about August 26, 2008, the Pension Fund notified Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth International Franchising, as well as the attorneys for these various companies, that Defendant Phoenix Labs was in default within the meaning of 29 U.S.C. §1399(c)(5) for failure to make any withdrawal liability payments to the Pension Fund on or before August 18, 2008.

101.    More than sixty (60) days have elapsed since Defendants Phoenix Labs, Evergood,

Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth International Franchising received the MPPAA default notice and Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution, Great Earth International Franchising and Phoenix Labs Rising have failed to make any withdrawal liability payments whatsoever.

102.   By reason of Defendant Phoenix Labs' failure to make any withdrawal liability payments, Defendant Evergood is in default with the meaning of 29 U.S.C. §1399(c)(5).

103.   Accordingly, Defendant Evergood is liable to the Pension Fund for the full amount of withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less than $962,748.00, plus interest, costs and attorneys' fees.

## AS AND FOR A FOURTH CAUSE OF ACTION BY THE PENSION FUND AGAINST DEFENDANT GREAT EARTH - MPPAA WITHDRAWAL LIABILITY

104.   The Pension Fund repeats and realleges each and every allegation set forth in paragraphs 1 through 103 as if fully set forth herein.

105.   In or around April 2008, Defendant Phoenix Labs entered into an APA with Phoenix Rising.

106.   The "Sale of Assets" provision of MPPAA, 29 U.S.C.A. § 1384, requires that, in order for Defendant Phoenix Labs to have avoided liability for a partial or complete withdrawal from the Pension Fund, Defendant Phoenix Labs was required to include language in the APA providing that: (1) Phoenix Rising have an obligation to contribute to the plan with respect to the operations for substantially the same amounts as the selling employer (Defendant Phoenix Labs); (2) Phoenix Rising must provide the plan with a bond or

establish an escrow account for five plan years, with the amount equal to the average annual contribution required under the plan for the preceding three years or the annual required contributions for the previous plan year; and (3) must provide that if Phoenix Rising completely withdraws from the plan or partially withdraws with respect to the operations within the first five plan years after the sale of assets, that Defendant Phoenix Labs will be secondarily liable for any withdrawal liability.

107.   The terms of the APA failed entirely to comply with the "Sale of Assets" provision of MPPAA.

108.   As a result, Defendant Phoenix Labs has engaged in a complete withdrawal from the Pension Fund within the meaning of 29 U.S.C. §1383.

109.   As a consequence of Phoenix Labs' withdrawal from the Pension Fund, the Pension Fund has determined that Defendant Phoenix Labs is liable to the Pension Fund in the amount of no less than nine hundred and sixty-two thousand seven hundred and forty-eight ($962,748.00) dollars, as determined pursuant to 29 U.S.C. §1391, and Defendant Phoenix Labs is therefore liable to the Pension Fund for this amount pursuant to 29 U.S.C. §1381.

110.   The Trustees of the Pension Fund have a statutory and fiduciary obligation to collect the withdrawal liability from a withdrawing employer pursuant to 29 U.S.C. § 1382.

111.   Upon information and belief, Defendant Great Earth is under "common control" with Defendant Phoenix Labs, and therefore is jointly and severally liable to the Pension Fund for the withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less than $962,748.00.

112. On or about June 17, 2008, pursuant to 29 U.S.C. §1383 and 1399, the Pension Fund sent
a Notice of Withdrawal Liability, together with a schedule of payments, to Defendants
Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth
Distribution and Great Earth International Franchising, as well as the attorneys for these
various companies.

113. Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great
Earth Distribution and Great Earth International Franchising failed to make any
withdrawal liability payments to the Pension Fund.

114. On or about August 26, 2008, the Pension Fund notified Defendants Phoenix Labs,
Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great
Earth International Franchising, as well as the attorneys for these various companies, that
Defendant Phoenix Labs was in default within the meaning of 29 U.S.C. §1399(c)(5) for
failure to make any withdrawal liability payments to the Pension Fund on or before
August 18, 2008.

115. More than sixty (60) days have elapsed since Defendants Phoenix Labs, Evergood,
Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth
International Franchising received the MPPAA default notice and Defendants Phoenix
Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and
Great Earth International Franchising have failed to make any withdrawal liability
payments whatsoever.

116. By reason of Defendant Phoenix Labs' failure to make any withdrawal liability payments,
Defendant Great Earth is in default with the meaning of 29 U.S.C. §1399(c)(5).

117.    Accordingly, Defendant Great Earth is liable to the Pension Fund for the full amount of

        withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less than

        $962.748.00, plus interest, costs and attorneys' fees.

### AS AND FOR A FIFTH CAUSE OF ACTION BY THE PENSION FUND AGAINST DEFENDANT GREAT EARTH DISTRIBUTION - MPPAA WITHDRAWAL LIABILITY

118.    The Pension Fund repeats and realleges each and every allegation set forth in paragraphs

        1 through 117 as if fully set forth herein.

119.    In or around April 2008, Defendant Phoenix Labs entered into an APA with Phoenix

        Rising.

120.    The "Sale of Assets" provision of MPPAA, 29 U.S.C.A. § 1384, requires that, in order

        for Defendant Phoenix Labs to have avoided liability for a partial or complete withdrawal

        from the Pension Fund, Defendant Phoenix Labs was required to include language in the

        APA providing that: (1) Phoenix Rising have an obligation to contribute to the plan with

        respect to the operations for substantially the same amounts as the selling employer

        (Defendant Phoenix Labs); (2) Phoenix Rising must provide the plan with a bond or

        establish an escrow account for five plan years, with the amount equal to the average

        annual contribution required under the plan for the preceding three years or the annual

        required contributions for the previous plan year; and (3) must provide that if Phoenix

        Rising completely withdraws from the plan or partially withdraws with respect to the

        operations within the first five plan years after the sale of assets, that Defendant Phoenix

        Labs will be secondarily liable for any withdrawal liability.

121.    The terms of the APA failed entirely to comply with the "Sale of Assets" provision of

MPPAA.

122.    As a result, Defendant Phoenix Labs has engaged in a complete withdrawal from the
Pension Fund within the meaning of 29 U.S.C. §1383.

123.    As a consequence of Phoenix Labs' withdrawal from the Pension Fund, the Pension Fund
has determined that Defendant Phoenix Labs is liable to the Pension Fund in the amount
of no less than nine hundred and sixty-two thousand seven hundred and forty-eight
($962,748.00) dollars, as determined pursuant to 29 U.S.C. §1391, and Defendant
Phoenix Labs is therefore liable to the Pension Fund for this amount pursuant to 29
U.S.C. §1381.

124.    The Trustees of the Pension Fund have a statutory and fiduciary obligation to collect the
withdrawal liability from a withdrawing employer pursuant to 29 U.S.C. § 1382.

125.    Upon information and belief, Defendant Great Earth Distribution is under "common
control" with Defendant Phoenix Labs, and therefore is jointly and severally liable to the
Pension Fund for the withdrawal liability incurred by Defendant Phoenix Labs, in an
amount not less than $962,748.00.

126.    On or about June 17, 2008, pursuant to 29 U.S.C. §1383 and 1399, the Pension Fund sent
a Notice of Withdrawal Liability, together with a schedule of payments, to Defendants
Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth
Distribution and Great Earth International Franchising, as well as the attorneys for these
various companies.

127.    Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great
Earth Distribution and Great Earth International Franchising failed to make any

28

withdrawal liability payments to the Pension Fund.

128.   On or about August 26, 2008, the Pension Fund notified Defendants Phoenix Labs,
Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great
Earth International Franchising, as well as the attorneys for these various companies, that
Defendant Phoenix Labs was in default within the meaning of 29 U.S.C. §1399(c)(5) for
failure to make any withdrawal liability payments to the Pension Fund on or before
August 18, 2008.

129.   More than sixty (60) days have elapsed since Defendants Phoenix Labs, Evergood,
Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth
International Franchising received the MPPAA default notice and Defendants Phoenix
Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and
Great Earth International Franchising have failed to make any withdrawal liability
payments whatsoever.

130.   By reason of Defendant Phoenix Labs' failure to make any withdrawal liability payments,
Defendant Great Earth Distribution is in default with the meaning of 29 U.S.C.
§1399(c)(5).

131.   Accordingly, Defendant Great Earth Distribution is liable to the Pension Fund for the full
amount of withdrawal liability incurred by Defendant Phoenix Labs, in an amount not
less than $962,748.00, plus interest, costs and attorneys' fees.

### AS AND FOR A SIXTH CAUSE OF ACTION BY THE PENSION FUND AGAINST DEFENDANT GREAT EARTH INTERNATIONAL FRANCHISING - MPPAA WITHDRAWAL LIABILITY

132.   The Pension Fund repeats and realleges each and every allegation set forth in paragraphs

1 through 131 as if fully set forth herein.

133.   In or around April 2008, Defendant Phoenix Labs entered into an APA with Phoenix
       Rising.

134.   The "Sale of Assets" provision of MPPAA, 29 U.S.C.A. § 1384, requires that, in order
       for Defendant Phoenix Labs to have avoided liability for a partial or complete withdrawal
       from the Pension Fund, Defendant Phoenix Labs was required to include language in the
       APA providing that: (1) Phoenix Rising have an obligation to contribute to the plan with
       respect to the operations for substantially the same amounts as the selling employer
       (Defendant Phoenix Labs); (2) Phoenix Rising must provide the plan with a bond or
       establish an escrow account for five plan years, with the amount equal to the average
       annual contribution required under the plan for the preceding three years or the annual
       required contributions for the previous plan year; and (3) must provide that if Phoenix
       Rising completely withdraws from the plan or partially withdraws with respect to the
       operations within the first five plan years after the sale of assets, that Defendant Phoenix
       Labs will be secondarily liable for any withdrawal liability.

135.   The terms of the APA failed entirely to comply with the "Sale of Assets" provision of
       MPPAA.

136.   As a result, Defendant Phoenix Labs has engaged in a complete withdrawal from the
       Pension Fund within the meaning of 29 U.S.C. §1383.

137.   As a consequence of Phoenix Labs' withdrawal from the Pension Fund, the Pension Fund
       has determined that Defendant Phoenix Labs is liable to the Pension Fund in the amount
       of no less than nine hundred and sixty-two thousand seven hundred and forty-eight

($962,748.00) dollars, as determined pursuant to 29 U.S.C. §1391, and Defendant

Phoenix Labs is therefore liable to the Pension Fund for this amount pursuant to 29

U.S.C. §1381.

138. The Trustees of the Pension Fund have a statutory and fiduciary obligation to collect the

withdrawal liability from a withdrawing employer pursuant to 29 U.S.C. § 1382.

139. Upon information and belief, Defendant Great Earth International Franchising is under

"common control" with Defendant Phoenix Labs, and therefore is jointly and severally

liable to the Pension Fund for the withdrawal liability incurred by Defendant Phoenix

Labs, in an amount not less than $962,748.00.

140. On or about June 17, 2008, pursuant to 29 U.S.C. §1383 and 1399, the Pension Fund sent

a Notice of Withdrawal Liability, together with a schedule of payments, to Defendants

Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth

Distribution and Great Earth International Franchising, as well as the attorneys for these

various companies.

141. Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great

Earth Distribution and Great Earth International Franchising failed to make any

withdrawal liability payments to the Pension Fund.

142. On or about August 26, 2008, the Pension Fund notified Defendants Phoenix Labs,

Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great

Earth International Franchising, as well as the attorneys for these various companies, that

Defendant Phoenix Labs was in default within the meaning of 29 U.S.C. §1399(c)(5) for

failure to make any withdrawal liability payments to the Pension Fund on or before

August 18, 2008.

143.    More than sixty (60) days have elapsed since Defendants Phoenix Labs, Evergood,

Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth

International Franchising received the MPPAA default notice and Defendants Phoenix

Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and

Great Earth International Franchising have failed to make any withdrawal liability

payments whatsoever.

144.    By reason of Defendant Phoenix Labs' failure to make any withdrawal liability payments,

Defendant Great Earth International Franchising is in default with the meaning of 29

U.S.C. §1399(c)(5).

145.    Accordingly, Defendant Great Earth International Franchising is liable to the Pension

Fund for the full amount of withdrawal liability incurred by Defendant Phoenix Labs, in

an amount not less than $962,748.00, plus interest, costs and attorneys' fees.

## AS AND FOR A SEVENTH CAUSE OF ACTION BY THE PENSION FUND AGAINST DEFENDANT BODYONICS - MPPAA WITHDRAWAL LIABILITY

146.    The Pension Fund repeats and realleges each and every allegation set forth in paragraphs

1 through 145 as if fully set forth herein.

147.    In or around April 2008, Defendant Phoenix Labs entered into an APA with Phoenix

Rising.

148.    The "Sale of Assets" provision of MPPAA, 29 U.S.C.A. § 1384, requires that, in order

for Defendant Phoenix Labs to have avoided liability for a partial or complete withdrawal

from the Pension Fund, Defendant Phoenix Labs was required to include language in the

32

APA providing that: (1) Phoenix Rising have an obligation to contribute to the plan with respect to the operations for substantially the same amounts as the selling employer (Defendant Phoenix Labs); (2) Phoenix Rising must provide the plan with a bond or establish an escrow account for five plan years, with the amount equal to the average annual contribution required under the plan for the preceding three years or the annual required contributions for the previous plan year; and (3) must provide that if Phoenix Rising completely withdraws from the plan or partially withdraws with respect to the operations within the first five plan years after the sale of assets, that Defendant Phoenix Labs will be secondarily liable for any withdrawal liability.

149.   The terms of the APA failed entirely to comply with the "Sale of Assets" provision of MPPAA.

150.   As a result, Defendant Phoenix Labs has engaged in a complete withdrawal from the Pension Fund within the meaning of 29 U.S.C. §1383.

151.   As a consequence of Phoenix Labs' withdrawal from the Pension Fund, the Pension Fund has determined that Defendant Phoenix Labs is liable to the Pension Fund in the amount of no less than nine hundred and sixty-two thousand seven hundred and forty-eight ($962,748.00) dollars, as determined pursuant to 29 U.S.C. §1391, and Defendant Phoenix Labs is therefore liable to the Pension Fund for this amount pursuant to 29 U.S.C. §1381.

152.   The Trustees of the Pension Fund have a statutory and fiduciary obligation to collect the withdrawal liability from a withdrawing employer pursuant to 29 U.S.C. § 1382.

153.   Upon information and belief, Defendant Bodyonics is under "common control" with

33

Defendant Phoenix Labs, and therefore is jointly and severally liable to the Pension Fund
for the withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less
than $962,748.00.

154.   On or about June 17, 2008, pursuant to 29 U.S.C. §1383 and 1399, the Pension Fund sent
a Notice of Withdrawal Liability, together with a schedule of payments, to Defendants
Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth
Distribution and Great Earth International Franchising, as well as the attorneys for these
various companies.

155.   Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great
Earth Distribution and Great Earth International Franchising failed to make any
withdrawal liability payments to the Pension Fund.

156.   On or about August 26, 2008, the Pension Fund notified Defendants Phoenix Labs,
Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great
Earth International Franchising, as well as the attorneys for these various companies, that
Defendant Phoenix Labs was in default within the meaning of 29 U.S.C. §1399(c)(5) for
failure to make any withdrawal liability payments to the Pension Fund on or before
August 18, 2008.

157.   More than sixty (60) days have elapsed since Defendants Phoenix Labs, Evergood,
Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth
International Franchising received the MPPAA default notice and Defendants Phoenix
Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and
Great Earth International Franchising have failed to make any withdrawal liability

34

payments whatsoever.

158.   By reason of Defendant Phoenix Labs' failure to make any withdrawal liability payments,
       Defendant Bodyonics is in default with the meaning of 29 U.S.C. §1399(c)(5).

159.   Accordingly, Defendant Bodyonics is liable to the Pension Fund for the full amount of
       withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less than
       $962,748.00, plus interest, costs and attorneys' fees.

**AS AND FOR AN EIGHTH CAUSE OF ACTION BY THE PENSION FUND AGAINST
DEFENDANT CYENCE - MPPAA WITHDRAWAL LIABILITY**

160.   The Pension Fund repeats and realleges each and every allegation set forth in paragraphs
       1 through 159 as if fully set forth herein.

161.   In or around April 2008, Defendant Phoenix Labs entered into an APA with Phoenix
       Rising.

162.   The "Sale of Assets" provision of MPPAA, 29 U.S.C.A. § 1384, requires that, in order
       for Defendant Phoenix Labs to have avoided liability for a partial or complete withdrawal
       from the Pension Fund, Defendant Phoenix Labs was required to include language in the
       APA providing that: (1) Phoenix Rising have an obligation to contribute to the plan with
       respect to the operations for substantially the same amounts as the selling employer
       (Defendant Phoenix Labs); (2) Phoenix Rising must provide the plan with a bond or
       establish an escrow account for five plan years, with the amount equal to the average
       annual contribution required under the plan for the preceding three years or the annual
       required contributions for the previous plan year; and (3) must provide that if Phoenix
       Rising completely withdraws from the plan or partially withdraws with respect to the

operations within the first five plan years after the sale of assets, that Defendant Phoenix Labs will be secondarily liable for any withdrawal liability.

163.  The terms of the APA failed entirely to comply with the "Sale of Assets" provision of MPPAA.

164.  As a result, Defendant Phoenix Labs has engaged in a complete withdrawal from the Pension Fund within the meaning of 29 U.S.C. §1383.

165.  As a consequence of Phoenix Labs' withdrawal from the Pension Fund, the Pension Fund has determined that Defendant Phoenix Labs is liable to the Pension Fund in the amount of no less than nine hundred and sixty-two thousand seven hundred and forty-eight ($962,748.00) dollars, as determined pursuant to 29 U.S.C. §1391, and Defendant Phoenix Labs is therefore liable to the Pension Fund for this amount pursuant to 29 U.S.C. §1381.

166.  The Trustees of the Pension Fund have a statutory and fiduciary obligation to collect the withdrawal liability from a withdrawing employer pursuant to 29 U.S.C. § 1382.

167.  Upon information and belief, Defendant Cyence is under "common control" with Defendant Phoenix Labs, and therefore is jointly and severally liable to the Pension Fund for the withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less than $962,748.00.

168.  On or about June 17, 2008, pursuant to 29 U.S.C. §1383 and 1399, the Pension Fund sent a Notice of Withdrawal Liability, together with a schedule of payments, to Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth International Franchising, as well as the attorneys for these

various companies.

169.  Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great
      Earth Distribution and Great Earth International Franchising failed to make any
      withdrawal liability payments to the Pension Fund.

170.  On or about August 26, 2008, the Pension Fund notified Defendants Phoenix Labs,
      Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great
      Earth International Franchising, as well as the attorneys for these various companies, that
      Defendant Phoenix Labs was in default within the meaning of 29 U.S.C. §1399(c)(5) for
      failure to make any withdrawal liability payments to the Pension Fund on or before
      August 18, 2008.

171.  More than sixty (60) days have elapsed since Defendants Phoenix Labs, Evergood,
      Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth
      International Franchising received the MPPAA default notice and Defendants Phoenix
      Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and
      Great Earth International Franchising have failed to make any withdrawal liability
      payments whatsoever.

172.  By reason of Defendant Phoenix Labs' failure to make any withdrawal liability payments,
      Defendant Cyence is in default with the meaning of 29 U.S.C. §1399(c)(5).

173.  Accordingly, Defendant Cyence is liable to the Pension Fund for the full amount of
      withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less than
      $962,748.00, plus interest, costs and attorneys' fees.

## AS AND FOR A NINTH CAUSE OF ACTION BY THE PENSION FUND AGAINST DEFENDANT CYTODYNE - MPPAA WITHDRAWAL LIABILITY

174.    The Pension Fund repeats and realleges each and every allegation set forth in paragraphs

1 through 173 as if fully set forth herein.

175.    In or around April 2008, Defendant Phoenix Labs entered into an APA with Phoenix

Rising.

176.    The "Sale of Assets" provision of MPPAA, 29 U.S.C.A. § 1384, requires that, in order

for Defendant Phoenix Labs to have avoided liability for a partial or complete withdrawal

from the Pension Fund, Defendant Phoenix Labs was required to include language in the

APA providing that: (1) Phoenix Rising have an obligation to contribute to the plan with

respect to the operations for substantially the same amounts as the selling employer

(Defendant Phoenix Labs); (2) Phoenix Rising must provide the plan with a bond or

establish an escrow account for five plan years, with the amount equal to the average

annual contribution required under the plan for the preceding three years or the annual

required contributions for the previous plan year; and (3) must provide that if Phoenix

Rising completely withdraws from the plan or partially withdraws with respect to the

operations within the first five plan years after the sale of assets, that Defendant Phoenix

Labs will be secondarily liable for any withdrawal liability.

177.    The terms of the APA failed entirely to comply with the "Sale of Assets" provision of

MPPAA.

178.    As a result, Defendant Phoenix Labs has engaged in a complete withdrawal from the

Pension Fund within the meaning of 29 U.S.C. §1383.

38

179.  As a consequence of Phoenix Labs' withdrawal from the Pension Fund, the Pension Fund
has determined that Defendant Phoenix Labs is liable to the Pension Fund in the amount
of no less than nine hundred and sixty-two thousand seven hundred and forty-eight
($962,748.00) dollars, as determined pursuant to 29 U.S.C. §1391, and Defendant
Phoenix Labs is therefore liable to the Pension Fund for this amount pursuant to 29
U.S.C. §1381.

180.  The Trustees of the Pension Fund have a statutory and fiduciary obligation to collect the
withdrawal liability from a withdrawing employer pursuant to 29 U.S.C. § 1382.

181.  Upon information and belief, Defendant Cytodyne is under "common control" with
Defendant Phoenix Labs, and therefore is jointly and severally liable to the Pension Fund
for the withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less
than $962,748.00.

182.  On or about June 17, 2008, pursuant to 29 U.S.C. §1383 and 1399, the Pension Fund sent
a Notice of Withdrawal Liability, together with a schedule of payments, to Defendants
Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth
Distribution and Great Earth International Franchising, as well as the attorneys for these
various companies.

183.  Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great
Earth Distribution and Great Earth International Franchising failed to make any
withdrawal liability payments to the Pension Fund.

184.  On or about August 26, 2008, the Pension Fund notified Defendants Phoenix Labs,
Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great

Earth International Franchising, as well as the attorneys for these various companies, that Defendant Phoenix Labs was in default within the meaning of 29 U.S.C. §1399(c)(5) for failure to make any withdrawal liability payments to the Pension Fund on or before August 18, 2008.

185.    More than sixty (60) days have elapsed since Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth International Franchising received the MPPAA default notice and Defendants Phoenix Labs, Evergood, Cytodyne, Cyence, Bodyonics, Great Earth, Great Earth Distribution and Great Earth International Franchising have failed to make any withdrawal liability payments whatsoever.

186.    By reason of Defendant Phoenix Labs' failure to make any withdrawal liability payments, Defendant Cytodyne is in default with the meaning of 29 U.S.C. §1399(c)(5).

187.    Accordingly, Defendant Cytodyne is liable to the Pension Fund for the full amount of withdrawal liability incurred by Defendant Phoenix Labs, in an amount not less than $962,748.00, plus interest, costs and attorneys' fees.

## AS AND FOR A TENTH CAUSE OF ACTION AGAINST DEFENDANTS PHOENIX LABS, EVERGOOD, MELVIN RICH, STEPHEN STERN, CHARLOTTE RICH AND HALLIE RICH - CONSTRUCTIVE FRAUDULENT CONVEYANCE PURSUANT TO DCL §273

188.    The Funds repeat and reallege each and every allegation set forth in paragraphs 1 through 187 as if fully set forth herein.

189.    In or around April 2008, Defendant Phoenix Labs entered into an APA with Phoenix Rising, pursuant to which Defendant Phoenix Labs agreed to sell its assets to Phoenix

40

Rising in exchange for, inter alia, Phoenix Rising's assumption of certain liabilities of

Defendant Phoenix Labs, as well as Phoenix Rising's agreement to pay:

a.      A promissory note between Phoenix Rising and Defendant Phoenix Labs totaling
        one million ($1,000,000.00) dollars;

b.      A promissory note between Phoenix Rising and Defendant Melvin Rich totaling
        one million ($1,000,000.00) dollars;

c.      A promissory note between Phoenix Rising and Defendant Stephen Stern totaling
        four hundred thousand ($400,000.00) dollars;

d.      A promissory note between Phoenix Rising and Defendant Hallie Rich totaling
        one hundred and fourteen thousand ($114,000.00) dollars; and

e.      A promissory note between Phoenix Rising and Defendant Charlotte Rich totaling
        two hundred thousand ($200,000.00) dollars.

190.   Upon information and belief, a major portion of the sale price of the assets of Defendant

       Phoenix Labs to Phoenix Rising was for payments made and/or scheduled to be made for

       non-compete agreements between Phoenix Rising and Defendants Melvin Rich, Stephen

       Stern, Hallie Rich and Charlotte Rich.

191.   At his deposition on or about July 2, 2008, Defendant Stephen Stern testified that he is

       not an employee of Defendant Phoenix Labs, has not been an officer of Defendant

       Phoenix Labs for "at least approximately five (5) years", and that since that time he has

       been engaged with Defendant Phoenix Labs solely in his capacity as its attorney.

192.   Upon information and belief, Defendant Charlotte Rich is approximately eighty-nine (89)

       years old and has not worked full time for Defendant Phoenix Labs for many years.

193. Upon Information and belief, Defendant Melvin Rich was gravely ill at the time of the signing of the APA in or around April 2008 and has since passed away.

194. Upon information and belief, the structuring of the payments pursuant to the APA, by which Defendants Melvin Rich, Stephen Stern, Charlotte Rich and Hallie Rich received and/or are scheduled to receive large sums of money in exchange for non-compete agreements, constitutes a constructively fraudulent transaction because Defendant Phoenix Labs has been rendered insolvent by way of this transaction and fair consideration for the assets of Defendant Phoenix Labs has been or is scheduled to be diverted to its principals instead of its legitimate creditors.

195. Upon information and belief, at the time of the transfer of the assets of Defendant Phoenix Labs to Phoenix Rising, the parties believed the value of the assets of Defendant Phoenix Labs to be worth $2,714,000.00, which included $1,714,000.00 to be paid to Defendants Melvin Rich, Stephen Stern, Charlotte Rich and Hallie Rich for the non-compete agreements.

196. Upon information and belief, the payment scheduled to be made to Defendant Phoenix Labs pursuant to the APA does not constitute fair consideration for its value, and the APA was structured in a manner to leave Defendant Phoenix Labs inadequately capitalized to satisfy its legitimate creditors, including Plaintiffs.

197. Thus, since the sales price without the price for the non-compete agreements could not pay the debts of Defendant Phoenix Labs, and was not for fair consideration, the sale of the assets for the unnecessary non-compete agreements constitutes a constructively fraudulent conveyance.

198.   Accordingly, those payments made and/or scheduled to be made pursuant to the APA by
       Phoenix Rising to Defendants Melvin Rich, Stephen Stern, Hallie Rich and Charlotte
       Rich should instead be used to satisfy Defendant Phoenix Labs' withdrawal liability owed
       to the Pension Fund, Defendant Phoenix Labs' delinquent health, welfare and pension
       contributions owed to the Funds for the month of April 2008, and the entire amount due
       and owing to the Welfare Fund pursuant to a judgment obtained by the Welfare Fund
       against Defendants Phoenix Labs and Evergood in the Underlying Action.

199.   Based upon the facts set forth above, the Funds request that Defendants Melvin Rich,
       through his estate, Stephen Stern, Hallie Rich and Charlotte Rich be jointly and severally
       ordered, directed and compelled, pursuant to DCL §273, to turn over to the Funds those
       payments made and/or scheduled to be made pursuant to the APA by Phoenix Rising to
       Defendants Melvin Rich, Stephen Stern, Hallie Rich and Charlotte Rich to satisfy the
       withdrawal liability payments to the Pension Fund incurred by Defendant Phoenix Labs
       in an amount not less than $962,748.00; Phoenix Labs' contributions to the Funds for the
       month of April 2008, in an amount to be determined at trial but believed to exceed
       $34,500.00; and the $89,798.27 due and unpaid pursuant to the Welfare Fund's judgment
       obtained against Phoenix Labs and Evergood, plus interest, costs and attorneys' fees.

### AS FOR AN ELEVENTH CAUSE OF ACTION AGAINST DEFENDANT PHOENIX LABS - VIOLATIONS OF CBA, TRUST AGREEMENTS AND PROVISIONS OF ERISA

200.   The Funds repeat and reallege each and every allegation set forth in paragraphs 1 through
       199 as if fully set forth herein.

201.   Defendant Phoenix Labs willfully failed to remit the required health, welfare and pension

contributions and reports for the month of April 2008 in an amount to be determined at trial but believed to exceed $34,500.00.

202. For the month of April 2008, Defendant Phoenix Labs has similarly failed to report to the Funds its employees who worked for Defendant Phoenix Labs in the categories set forth in the CBA and/or all of the hours worked by these employees.

203. Said failure and refusal by Defendant Phoenix Labs to report and make contributions for those employees constitutes a violation of Defendant Phoenix Labs' obligations pursuant to the CBA and the Trust Agreements, and is a violation of the provisions of ERISA and the LMRA. Plaintiffs seek enforcement of those provisions pursuant to Sections 502(a)(3)(b)(ii) and 515 of ERISA, 29 U.S.C. § 1132(a)(3)(b)(ii) and 29 U.S.C. § 1145, and Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

204. Although payment has been duly demanded, Defendant Phoenix Labs has failed and refused to pay contributions to the Funds as they become due.

205. As a result of Defendant Phoenix Labs' violations of the CBA, the Trust Agreements and ERISA, the Funds may be required to deny benefits provided under the Funds' benefit plan to employees of Defendant Phoenix Labs working in covered employment for whom contributions have not been made, thereby causing said employee beneficiaries substantial and irreparable damage, which could create significant litigation by these unreported employees of Defendant Phoenix Labs, who may claim the rights to receive medical coverage and pension benefits from the Funds.

206. Furthermore, the Funds may be required to provide said employee beneficiaries with benefits, notwithstanding Defendant Phoenix Labs' failure to make its required

contributions, thereby reducing the corpus of the Funds and endangering the rights of the employee beneficiaries on whose behalf contributions are properly being made, all to their substantial and irreparable injury.

207.   Defendant Phoenix Labs owes the Funds an amount to be determined at trial, but believed to exceed $34,500.00 dollars in unpaid contributions to the Funds for the month of April 2008.

208.   The Trust Agreements, referred to above, provide for the assessment of liquidated damages at a rate to be set by the Plaintiffs, as well as the expenses incurred in collecting such delinquent contributions, including attorneys` fees.

209.   Accordingly, Defendant Phoenix Labs is liable to Plaintiffs for delinquent contributions for the month of April 2008 in an amount to be determined at trial, but believed to exceed $34,000.00; liquidated damages at the rate of interest on the unpaid contributions, or twenty percent (20%) of all of the unpaid contributions, whichever is greater; and reasonable attorneys` fees and the costs of this action.

### AS FOR A TWELFTH CAUSE OF ACTION AGAINST DEFENDANTS MELVIN RICH, CHARLOTTE RICH AND HALLIE RICH - BREACH OF FIDUCIARY DUTY UNDER ERISA

210.   The Funds repeat and reallege each and every allegation set forth in paragraphs 1 through 209 as if fully set forth herein.

211.   The terms and conditions of employment contained in the CBA obligate Defendant Phoenix Labs to make monthly health and welfare contributions and reports to the Funds on behalf of each covered employee.

212.   Upon information and belief, as corporate principals of Defendant Phoenix Labs, at all

relevant times, Defendants Melvin Rich, Charlotte Rich and Hallie Rich were vested with the authority and control over the submission of Defendant Phoenix Labs' required monthly contributions and reports to the Funds, and thus had the responsibility of making the required contributions on behalf of Defendant Phoenix Labs to the Funds.

213. Accordingly, Defendants Melvin Rich, Charlotte Rich and Hallie Rich held these monies as fiduciaries pursuant to 29 U.S.C. § 1104(a)(1) and were required to discharge their duties solely in the interest of Defendant Phoenix Labs' covered employees and their beneficiaries.

214. Upon information and belief, Defendants Melvin Rich, Charlotte Rich and Hallie Rich devised a scheme and participated in a conspiracy to evade making contributions to the Funds and to convert the monies due to the Funds pursuant to the CBA for the use of Defendant Phoenix Labs and/or for their own use.

215. Upon information and belief, once Defendants Melvin Rich, Charlotte Rich and Hallie Rich knowingly and purposefully failed to properly report the employees in covered employment, and failed to make the required contributions to the Funds on their behalf, they exercised authority and control over the Funds' assets.

216. Upon information and belief, such conversion constitutes a breach of the fiduciary duties possessed by Defendants Melvin Rich, Charlotte Rich and Hallie Rich pursuant to 29 U.S.C. § 1104(a)(1).

217. Upon information and belief, pursuant to 29 U.S.C. § 1109(a), Defendants Melvin Rich, Charlotte Rich and Hallie Rich, as fiduciaries with respect to the Funds, were personally liable for restoring those profits and assets which have been lost as a result of the breach

46

of their fiduciary duty.

218.    Accordingly, Defendants Melvin Rich (through his estate), Charlotte Rich and Hallie

Rich are liable to the Funds for delinquent contributions for the month of April 2008 in

an amount to be determined at trial, but believed to exceed $34,500.00; statutory interest

on the unpaid contributions; liquidated damages at the rate of interest on the unpaid

contributions, or twenty percent (20%) of all of the unpaid contributions, whichever is

greater; and reasonable attorneys' fees and the costs of this action.

## AS FOR A THIRTEENTH CAUSE OF ACTION BY THE WELFARE FUND AGAINST DEFENDANTS PHOENIX LABS AND EVERGOOD - COSTS AND ATTORNEYS' FEES ACCRUED TO DATE AS A RESULT OF ENFORCEMENT OF THE <u>JUDGMENT OBTAINED IN THE UNDERLYING ACTION</u>

219.    The Welfare Fund repeats and realleges each and every allegation set forth in paragraphs

1 through 218 as if fully set forth herein.

220.    In connection with the settlement of the Underlying Action and pursuant to the

Stipulation and Order of Settlement, Defendants Phoenix Labs and Evergood confessed

judgment in the amount of $360,000.00 in favor of the Welfare Fund. This Confession of

Judgment was to be held in escrow by the Welfare Funds' counsel, and not entered with

the Supreme Court of the State of New York, County of Suffolk, except in the event of an

uncured default under the terms of the Stipulation and Order of Settlement.

221.    The Stipulation and Order of Settlement provided that, in the event of an uncured default,

Defendants Phoenix Labs and Evergood, jointly and severally, were liable for all

reasonable costs and attorney's fees incurred by the Welfare Fund to enter the Confession

of Judgment and to enforce any judgment obtained against Defendants Phoenix Labs and

Evergood to collect the sums due.

222. On May 7, 2008, after Defendant Phoenix Labs had failed to cure its default in the time provided by the Stipulation and Order of Settlement, the Confession of Judgment against Defendants Phoenix Labs and Evergood was entered in the Supreme Court of the State of New York, County of Suffolk in the amount of $128,225.00, representing the settlement amount of $360,000.00, less $232,000.00 as credit for payments previously made by Defendant Phoenix Labs, plus costs and disbursements in the amount of $225.00, of which $89,798.27 remains due and outstanding.

223. Accordingly, Defendants Phoenix Labs and Evergood are liable to the Welfare Fund for all reasonable costs and attorneys' fees incurred by the Welfare Fund in obtaining, entering and enforcing the judgment in an amount to be determined at trial, but which currently exceeds twenty thousand ($20,000.00) dollars.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION AGAINST DEFENDANTS PHOENIX LABS, EVERGOOD, GREAT EARTH, GREAT EARTH DISTRIBUTION, GREAT EARTH INTERNATIONAL FRANCHISING, BODYONICS, CYENCE, AND CYTODYNE - APPOINTMENT OF A CORPORATE MONITOR

224. The Funds repeat and reallege each and every allegation set forth in paragraphs 1 through 223 as if fully set forth herein.

225. Defendants Phoenix Labs, Evergood, Great Earth, Great Earth Distribution, Great Earth International Franchising, Bodyonics, Cyence, and Cytodyne have willfully failed to make any withdrawal liability payments to the Pension Fund incurred by Defendant Phoenix Labs, in an amount not less than $962,748.00.

226. Defendant Phoenix Labs has similarly willfully failed to remit the required reports and

health, welfare and pension contributions for the month of April 2008 in an amount to be determined at trial, but believed to exceed $34,500.00.

227. There also remains $89,798.27 due and unpaid pursuant to the Welfare Fund's judgment obtained against Phoenix Labs and Evergood in connection with the Underlying Action.

228. As aforementioned, in connection with the execution of the APA, Phoenix Rising provided Defendant Phoenix Labs with a one million ($1,000,000.00) dollar promissory note, Defendant Melvin Rich with a one million ($1,000,000.00) dollar promissory note, Defendant Stephen Stern with a four hundred thousand ($400,000.00) dollar promissory note, Defendant Charlotte Rich with a two hundred thousand ($200,000.00) dollar promissory note and Defendant Hallie Rich with a one hundred and fourteen thousand ($114,000.00) dollar promissory note.

229. Additionally, as testified to by Defendant Hallie Rich during her deposition, Defendant Great Earth, which is a subsidiary of Defendant Evergood, has recently paid one hundred thousand ($100,000.00) dollars to a manufacturer of dietary supplements called "Global Health" to supply product to Defendant Great Earth for distribution to its vitamin stores.

230. Accordingly, upon information and belief, Defendant Great Earth continues to be an operating company that is generating income and profits for Defendant Evergood, and is an asset of Evergood.

231. By reason of the foregoing, Plaintiffs request that a Corporate Monitor be appointed to oversee the operations of Defendants Phoenix Labs, Evergood, Great Earth, Great Earth Distribution, Great Earth International Franchising, Bodyonics, Cyence, and Cytodyne to ensure, inter alia, that the withdrawal liability payments to the Pension Fund incurred by

Defendant Phoenix Labs in an amount not less than $962,748.00; Phoenix Labs'
contributions for the month of April 2008 in an amount to be determined at trial but
believed to exceed $34,500.00; and the $89,798.27 due and unpaid pursuant to the
Welfare Fund's judgment obtained against Phoenix Labs and Evergood are remitted by
Defendants Phoenix Labs, Evergood, Great Earth, Great Earth Distribution, Great Earth
International Franchising, Bodyonics, Cyence, and Cytodyne to the Funds.

**WHEREFORE,** Plaintiffs respectfully request Judgment against Defendants as follows:

A.   On the First Cause of Action, a judgment finding that Defendants Evergood, Great
Earth, Great Earth Distribution, Great Earth International Franchising, Bodyonics,
Cyence, and Cytodyne are under "common control" with Defendant Phoenix Labs;

B.   On the Second Cause of Action for MPPAA withdrawal liability, for the Pension
Fund and against Defendant Phoenix Labs in an amount not less than
$962,748.00;

C.   On the Third Cause of Action for MPPAA withdrawal liability, for the Pension
Fund and against Defendant Evergood in an amount not less than $962,748.00;

D.   On the Fourth Cause of Action for MPPAA withdrawal liability, for the Pension
Fund and against Defendant Great Earth in an amount not less than $962,748.00;

E.   On the Fifth Cause of Action for MPPAA withdrawal liability, for the Pension
Fund and against Defendant Great Earth Distribution in an amount not less than
$962,748.00;

F.   On the Sixth Cause of Action for MPPAA withdrawal liability, for the Pension
Fund and against Defendant Great Earth International Franchising in an amount

not less than $962,748.00;

G.    On the Seventh Cause of Action for MPPAA withdrawal liability, for the Pension Fund and against Defendant Bodyonics in an amount not less than $962,748.00;

H.    On the Eighth Cause of Action for MPPAA withdrawal liability, for the Pension Fund and against Defendant Cyence in an amount not less than $962,748.00;

I.    On the Ninth Cause of Action for MPPAA withdrawal liability, for the Pension Fund and against Defendant Cytodyne in an amount not less than $962,748.00;

J.    On the Tenth Cause of Action for constructive fraudulent conveyance, for the Funds and against Defendants Phoenix Labs, Evergood, Melvin Rich, Stephen Stern, Charlotte Rich and Hallie Rich in an amount to be determined at trial, but believed to exceed $1,087,046.27;

K.    On the Eleventh Cause of Action for violations of the CBA, Trust Agreements and ERISA, for the Funds and against Defendant Phoenix Labs in an amount to be determined at trial, but believed to exceed $34,500.00;

L.    On the Twelfth Cause of Action for breach of fiduciary duty, for the Funds and against Defendants Melvin Rich, Charlotte Rich and Hallie Rich in an amount to be determined at trial, but believed to exceed $34,500.00;

M.    On the Thirteenth Cause of Action for costs and attorneys' fees accrued to date as a result of the enforcement of the judgment obtained in the Underlying Action, for the Welfare Fund and against Defendants Phoenix Labs and Evergood in an amount to be determined at trial, but believed to exceed $20,000.00; and

N.    On the Fourteenth Cause of Action, appointment of a Corporate Monitor to

51

oversee the operations of Defendants Phoenix Labs, Evergood, Great Earth, Great

Earth Distribution, Great Earth International Franchising, Bodyonics, Cyence, and

Cytodyne;

and for the costs, fees and, where appropriate, reasonable attorneys' fees and expenses of this

action, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
       April 14, 2009

Yours, etc.,

DEALY & SILBERSTEIN, LLP

By: _____

Milo Silberstein (MS 4637)
*Attorneys for Plaintiffs the Trustees of the*
*United Teamster Fund and the Trustees of*
*the United Teamster Pension Fund*
225 Broadway, Suite 1405
New York, New York 10007
(212) 385-0066

52

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action.

Dated: New York, New York
        April 14, 2009

                                        Yours, etc.,

                                        DEALY & SILBERSTEIN, LLP

                                        By: _____
                                             Milo Silberstein (MS 4637)
                                             *Attorneys for Plaintiffs the Trustees of the*
                                             *United Teamster Fund and the Trustees of*
                                             *the United Teamster Pension Fund*
                                             225 Broadway, Suite 1405
                                             New York, New York 10007
                                             (212) 385-0066